IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION AT TOLEDO

| | |
|---|---|
| **Brian Lloyd,**<br>**5246 South Street**<br>**Vermilion, OH 44089**<br>**United States**<br><br>      **Plaintiff,**<br><br>      v.<br><br>**Fifth Third Bank,**<br>**38 Fountain Square Plaza**<br>**Cincinnati, OH 45202**<br><br>      **Defendant** | CASE NO.<br><br>JUDGE:<br><br>MAGISTRATE:<br><br>**CIVIL COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, SECTION 504 OF THE REHABILITATION ACT, AND OHIO REVISED CODE 4112.01 *et al.*** <br><br>**JURY DEMAND ENDORSED HEREON** |

Now comes Plaintiff, Brain Lloyd, by and through counsel, and for his Complaint against Defendant, Fifth Third Bank, states as follows:

**INTRODUCTION**

1. This is an action to vindicate the legal rights of Plaintiff Brian Lloyd, an individual with a disability, for violations of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et al.*; Section 504 of the Rehabilitation, 29 U.S.C. § 794 *et seq.*, and Ohio R.C. § 4112.01 *et al.*

2. The ADA specifically provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation." 42 U.S.C. §12182(a); 28 C.F.R. §36.201(a). The ADA further requires that a public accommodation shall provide effective

1

communications with people with disabilities, including the provision of auxiliary aids and services. See 28 C.F.R. §36.303(a), (b) and (c)(ii).

3. Fifth Third has refused to provide reasonable auxiliary aids and services necessary for Mr. Lloyd to effectively communicate with Fifth Third about financial services and products, as Fifth Third Bank will not permit Mr. LLoyd to utilize an American Sign Language interpreter to communicate with customer service representatives over the telephone, a service Fifth Third makes available to all other members, including during hours when branch offices are closed.

## PARTIES, JURISDICTION, AND VENUE

4. Plaintiff, Brain Lloyd is a person with a disability residing in Vermilion, Ohio.

5. Plaintiff is Deaf, and utilizes American Sign Language to communicate.

6. Plaintiff is substantially limited in the major life activities of hearing and communicating. 42 U.S.C. § 12102(1)-(2); 28 C.F.R. §§ 36.101 *et seq*.

7. Defendant, Fifth Third Bank, is a bank that offers financial services to its members, and is within the territorial jurisdiction of this Court.

8. Fifth Third Bank is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7) because it is a "bank" or "service establishment."

9. This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, as well as pursuant to 28 U.S.C. § 1367 for pertinent state law claims.

10. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. § 1391 as the incidents, events, or omissions complained of and giving rise to the instant claim or controversy occurred within this district.

## FACTS

11. Brian Lloyd is Deaf and communicates primarily via American Sign Language.

2

12. Mr. Lloyd requires auxiliary aids and services to effectively understand aurally delivered information and material and to effectively communicate.

13. For interactive discussions, qualified sign language interpreters, written materials, and video relay interpreter services are all effective means of communication for Mr. Lloyd.

14. Video Relay Service is a form of Telecommunications Relay Service (TRS), regulated by the Federal Communications Commission (FCC). According to the FCC, VRS works as follows:

> "[t]he VRS caller, using a television or a computer with a video camera device and a broadband (high speed) Internet connection, contacts a VRS [communications assistant (CA)], who is a qualified sign language interpreter. They communicate with each other in sign language through a video link. The VRS CA then places a telephone call to the party the VRS user wishes to call. The VRS CA relays the conversation back and forth between the parties -- in sign language with the VRS user, and by voice with the called party. No typing or text is involved."

See Federal Communications Commission, Video Relay Services, available at http://www.fcc.gov/guides/video-relay-services.

15. The FCC has promulgated regulations requiring CAs to maintain strictly confidential any information exchanged during relay calls and prohibiting CAs from changing the content of the message in any manner. See 47 C.F.R. § 64.604(a).

16. Mr. Lloyd has a checking account with Fifth Third Bank.

17. Fifth Third Bank offers its customers a variety of financial services, including checking and savings accounts, auto loans, credit cards, home mortgages, student loans, and personal loans.

18. Fifth Third Bank makes available numerous means for its customers to communicate with customer service about issues with their bank accounts.

19. Fifth Third Bank provides its members a toll free customer service line, available twenty four hours a day, seven days a week, and also has a number of branch offices open during traditional business hours during weekdays.

20. On a number of occasions in 2022, Mr. Lloyd called Fifth Third Bank's customer service line to speak with a customer service representative about his account.

21. During his telephone calls to Fifth Third Bank, Mr. Lloyd utilized a video relay service, in which a qualified ASL interpreter interpreted the call as a neutral, non-participating third party, providing spoken interpretation of Mr. Lloyd's communications to Fifth Third Bank, and providing Fifth Third Bank's spoken communications to Mr. Lloyd in ASL.

22. On April 6, 2022, Mr. Lloyd called Fifth Third Bank to get more information about the status of a transaction on his checking account.

23. The April 6 call was time sensitive because a retail company had charged Mr. Lloyd twice for a purchase and he needed to determine whether the company had yet provided a refund.

24. Because Mr. Lloyd was using a video relay service, Defendant became aware that Mr. Lloyd is Deaf and that he was communicating via an interpreter.

25. Defendant's representative informed Mr. Lloyd that per Defendant's policy, they cannot provide information and services to Mr. Lloyd through a video relay service for security reasons.

26. Fifth Third Bank demanded that the third party interpreter on the video relay service provide sensitive personal information in order for Fifth Third Bank to communicate with Mr. Lloyd about his account using a relay service.

27. Mr. Lloyd explained that Fifth Third Bank's demand for personal information about the interpreter is impossible and unreasonable to provide because the video relay service has

numerous employees who are randomly assigned to each call, and Mr. Lloyd does not have authority to release the personal financial information of their employees, nor is this necessary to verify Mr. Lloyd's identity or effectively communicate with him.

28. During the April 6 call, Mr. Lloyd requested to speak with a manager, who also refused to communicate with Mr. Lloyd about his account using a video relay service.

29. On June 14, 2022, through counsel, Mr. Lloyd sent a letter to Fifth Third Bank via certified mail providing notice of the access violation. A true and correct copy of the letter is attached hereto as Exhibit A.

30. Fifth Third Bank did not provide any response to the letter regarding the access violation.

31. On July 8, 2022, Mr. Lloyd again called Fifth Third Bank's customer service line regarding a transaction on his checking account.

32. After a lengthy wait on hold and a long discussion with a customer service representative, Fifth Third Bank again refused to speak with Mr. Lloyd about his account because he is Deaf and used a video relay service to communicate.

33. As a consequence of Fifth Third Bank's discriminatory conduct, Mr. Lloyd has been denied effective communications and equal access to customer services provided to other customers without disabilities.

34. Mr. Lloyd has been unable to utilize the customer service telephone line Fifth Third Bank makes available to all of its members and customers.

35. Through its actions and inaction, Fifth Third Bank has denied Mr. Lloyd auxiliary aids and services necessary to ensure effective communications.

36. As a result of the Defendant's failure to provide services to Mr. Lloyd through the video relay service, Mr. Lloyd has been unable to enjoy the benefits and services provided by Defendant, experienced frustration, anxiety, humiliation and anger, and was subjected to an increased risk of ongoing fraudulent activity on his account, as well as emotional distress.

37. Mr. Lloyd intends to continue to use Defendant's services to conduct banking transactions, if Defendant will enable communication through the use of video relay services.

## COUNT ONE
*Title III of the Americans with Disabilities Act*

38. Plaintiff realleges and incorporates herein all allegations contained in the preceding paragraphs.

39. Plaintiff is a person with a disability as defined by Title III of the Americans with Disabilities Act, with a substantial functional limitation in the major life activity of hearing. 42 U.S.C. §§ 12102(1)(A)-(2)(A).

40. Defendant is a place of public accommodation subject to Title III of the Americans with Disabilities Act. 42 U.S.C. § 12181(7)(F).

41. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

42. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

43. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination includes the following:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

44. The regulations implementing Title III of the ADA, promulgated by the United States Department of Justice, require that "[a] public accommodation shall respond to telephone calls from a telecommunications relay service . . . in the same manner that it responds to other telephone calls." See 28 U.S.C. § 36.303(d)(4).

45. Plaintiff advised Defendant of his disability related communications limitations, and his need for auxiliary aids and services to effectively communicate.

46. Defendant refused to provide auxiliary aids and services necessary for Plaintiff to effectively communicate about financial services OECU offers to its members, or to utilize the customer service telephone line OECU makes available to all of its members.

47. Defendant has discriminated against Plaintiff on the basis of disability by its failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation 42 U.S.C. § 12182 (b)(2)(a)(ii).

48. Defendant has discriminated against Plaintiff on the basis of disability by its failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation 42 U.S.C. § 12182 (b)(2)(a)(ii).

49. Defendant has discriminated against Plaintiff on the basis of disability by "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services."  42 U.S.C. § 12182 (b)(2)(a)(iii).

50. As a direct and proximate cause of Defendant's conduct, Mr. LLoyd has experienced humiliation, frustration, and annoyance, and he has been unable to access the services he needs to dispute an unauthorized charge on his bank account and he remains exposed to a heightened risk of fraud.

51. Despite written notice of the access violation, Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

52. Because this discrimination occurred pursuant to Defendant's policy, Defendant is likely to continue its discriminatory behavior against Deaf or hard of hearing individuals without an injunction.

## COUNT TWO
### *Violation of Section 504 of the Rehabilitation Act*

53. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

54. At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendant's conduct.

55. At all times relevant to this action, Plaintiff has had substantial limitations to the major life activities of hearing and speaking, and has been an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

56. At all times relevant to this action, Defendant has been a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

57. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

58. Defendant has intentionally discriminated against Plaintiff, solely on the basis of disability, by denying him meaningful access to the services, programs, and benefits the Defendant offers to other individuals, by refusing to accept video relay calls and imposing additional requirements in the form of authorization of an individual interpreter which would be infeasible in the context of a video relay call, in violation of all of the above-referenced statutory and regulatory provisions.

59. Absent injunctive relief there is a clear risk that Defendant's actions will recur with Plaintiff and other Deaf persons.

60. Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss they sustained as a result of Defendant's intentionally discriminatory conduct as alleged above, pursuant to 29 U.S.C. § 794(a).

61. Plaintiff is further entitled to an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a).

## COUNT THREE
### R.C. § 4112.01 et al.

62. Plaintiff realleges and incorporates herein all allegations contained herein as if fully rewritten.

63. Plaintiff is a person with a disability, as defined by R.C. § 4112.01(13), as he has a physical impairment that substantially limits the major life activity of hearing.

64. Defendant is a place of public accommodation and covered entity as defined by R.C. § 4112.01; and O.A.C. § 4112-5-02(I).

65. Ohio law provides that it is an unlawful discriminatory practice for "[f]or any proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, sex, military status, national origin, disability, age, or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation." R.C. § 4112.02(G).

66. Plaintiff advised Defendant of his disability related communications limitations, and his need for auxiliary aids and services to effectively communicate.

67. Defendant refused to provide auxiliary aids and services necessary for Plaintiff to effectively communicate with Fifth Third Bank about his account and to utilize the customer service telephone line that Fifth Third Bank makes available to all of its customers.

68. By engaging in the foregoing conduct, Defendant has committed an unlawful discriminatory practice in violation of R.C. § 4112.02(G).

69. As a direct and proximate cause of Fifth Third Bank's conduct, Mr. Lloyd has experienced humiliation, frustration, and annoyance at being denied access to services solely because he is Deaf.

70. As a direct and proximate cause of Fifth Third Bank's conduct, Mr. Lloyd has been unable to timely dispute and correct unauthorized charges on his bank account.

71. Despite receiving written notice of the violations, Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

72. Defendant acted willfully and in reckless disregard for the rights of Plaintiff, entitling him to compensatory and punitive damages, and injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Honorable Court grant Plaintiff judgment against Defendant as follows:

a. Issue a declaration that Defendant's policies, procedures, and practices regarding relay calls have subjected Mr. Lloyd to discrimination in violation of Title III of the Americans with Disabilities Act, the Rehabilitation Act, and Ohio law;

b. Enjoin Defendant from any policy, procedure, or practice that will deny Mr. Lloyd full and equal access to Defendants' services.

c. Order Defendant to develop and comply with written policies, procedures, and practices to ensure that Defendant does not discriminate against Mr. Lloyd and other individuals who are Deaf and hard of hearing.

d. Order Defendant to respond to calls placed through relay services by Mr. Lloyd or other Deaf or hard of hearing individuals in the same manner that they respond to other calls, and to place calls through relay services to Mr. Lloyd or other Deaf or hard of hearing individuals in the equal manner that they place other calls.

  e.  Order Defendant to implement an appropriate training program for Defendant's employees about Mr. Lloyd's rights, the rights of other individuals who are disabled, and about Defendant's policy and procedures for providing effective access to its customers.

  f.  Award Mr. Lloyd compensatory damages and prejudgment costs;

  h.  Award Mr. Lloyd his attorneys fees and costs; and

  h.  Award any and all other relief that the court deems necessary and appropriate.

          Respectfully submitted,

          */s/ Marc Dann*
          Marc E. Dann (0039425)
          DANNLAW
          15000 Madison Avenue
          Lakewood, Ohio 44107
          Phone (216) 373-0539
          Fax (216) 373-0536
          notices@dannlaw.com
          *Attorneys for Plaintiff Brian Lloyd*

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

          */s/ Marc Dann*
          Marc E. Dann (0039425)
          DANNLAW
          *Attorney for Plaintiff Brian Lloyd*